## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOHAMMAD SOHAIL SALEEM,    :    Civil No. 3:21-cv-1413
:
       Plaintiff     :    (Judge Mariani)
:
    v.       :
:
COMMONWEALTH OF PENNSYLVANIA,:
*et al.*,        :
:
       Defendants    :

### MEMORANDUM

Plaintiff Mohammad Sohail Saleem ("Saleem"), an inmate who was housed at all relevant times at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), commenced this civil rights action on July 9, 2021, in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. 1-1). The action was subsequently removed to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Named as Defendants are the Commonwealth of Pennsylvania, the Pennsylvania Department of Corrections, Correctional Officer Bickle, Correctional Officer Hanes, Correctional Officer Ostrofsky, Unit Manager Kuhn, Captain Dyke, Superintendent Garman, Grievance Coordinator N. Paul, Grievance Review Officer Amanda West, and Chief Grievance Officer Dorina Varner. Before the Court is Defendants' motion (Doc. 5) to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Federal Rule of Civil Procedure

12(d), the Court will treat the motion as one for summary judgment under Rule 56 with respect to the issue of exhaustion of administrative remedies.[1]  The remaining claims will be addressed in the Rule 12(b) motion.  Saleem failed to respond to Defendants' motion and the time for responding has now passed.[2]  Therefore, the motion is deemed unopposed and ripe for resolution.  For the reasons set forth below, the Court will grant the motion.

I.   **Rule 12(b)(6) Motion**

   A.   **Allegations of the Complaint**

   Saleem alleges that on December 10, 2018, he was in his cell reading religious materials when two fellow inmates entered his cell, attacked him, and robbed him.  (Doc. 1-1 ¶¶ 22-29).  Saleem reported the incident to prison officials and was transported to the medical department for treatment.  (*Id.* ¶¶ 30-31).  After an evaluation, he was immediately transferred to an outside hospital.  (*Id.* ¶¶ 31-32).  Saleem underwent further treatment at the outside hospital, received eye drops, and was transferred back to the prison later that day.  (*Id.* ¶ 33).  When Saleem returned to the prison, he alleges that his eye drops were

---

   [1]   On November 17, 2021, the Court issued an Order apprising the parties that the motion to dismiss would be treated as one for summary judgment with respect to the issue of exhaustion of administrative remedies.  (Doc. 9).  Because Defendants raised the issue of exhaustion of administrative remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Doc. 9).

   [2]   Saleem was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed.  (Docs. 8, 13) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

confiscated, he was placed in the Restricted Housing Unit ("RHU"), and his property was separated by his cellmate and packed by Defendant Hanes. (*Id.* ¶ 33). Saleem alleges that he did not receive medical care while housed in the RHU and had to treat his own eye injury. (*Id.* ¶ 34). A few days later, Saleem was transferred back to general population. (*Id.* ¶ 35). He picked up his personal property and noticed that commissary and personal items were missing. (*Id.* ¶ 36). Saleem alleges that Defendants Bickle, Ostrofsky, and Hanes packed the items in his cell and misplaced his property.

On December 17, 2018, Saleem sent a request slip regarding the missing items. (*Id.* ¶¶ 36-39). He received a response on December 29, 2018. (*Id.* ¶ 39). Also on December 29, 2018, Saleem filed Grievance Number 779527 complaining about his missing property. (*Id.* ¶¶ 39-40). On January 17, 2019, Defendant Kuhn denied the grievance and stated that all of Saleem's items were separated by his cellmate on December 10, 2018, and everything that belonged to Saleem was packed and inventoried. (*Id.* ¶ 41). On January 28, 2019, Saleem filed an appeal to the Facility Manager. (*Id.* ¶ 44). The Facility Manager denied the appeal on February 20, 2019. (*Id.* ¶ 46). Saleem allegedly did not receive the Facility Manager's denial until April 22, 2019 because he was temporarily transported to Lebanon County for a court hearing. (*Id.* ¶¶ 45-46). Saleem asserts that he filed an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") on May 9, 2019. (*Id.* ¶ 49). Because Saleem never received a response from the SOIGA, he sent a letter on July 9, 2019, inquiring about the status of his appeal. (*Id.* ¶ 49). In response, on July 18, 2019,

3

the SOIGA informed Saleem that the office never received his appeal. (*Id.* ¶ 50).  On July 29, 2019, Saleem mailed his appeal to the SOIGA. (*Id.* ¶ 51).  On August 8, 2019, the SOIGA dismissed Saleem's appeal. (*Id.*).  Saleem alleges that Defendants Kuhn, West, and Garman were dishonest in their responses to his grievance. (*Id.* ¶¶ 75-162, 155).

Saleem further alleges that corrections staff discriminated against him based on his religion by lodging religious insults, failing to protect him from the assault and robbery on December 10, 2018, and denying his grievance. (*Id.* ¶¶ 63, 67-73, 80).

### B.    Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual

4

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

5

would be inequitable or futile, the court must inform the plaintiff that he or she
has leave to amend the complaint within a set period of time.

*Id.*

### C.   Discussion

    1.    <u>Lack of Personal Involvement of Defendants Kuhn, Dyke,
Garman, Paul, West, and Varner</u>

Defendants Garman, Varner, Hayles, and Chernisky argue that Saleem fails to state

a claim against them because they lack personal involvement in the alleged wrongs.  (Doc.

6, pp. 4-7).  Individual liability can be imposed under section 1983 only if the state actor

played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on

the operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . .  Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence."  *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish personal

involvement.  *Rode*, 845 F.2d at 1208.

6

Saleem attempts to hold Defendants Kuhn, Dyke, Garman, Paul, and West liable based solely on their involvement in the grievance procedure.  (Doc. 1-1 ¶¶ 75-162).  This claim fails.  Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).  Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim.  *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).  Because the claims against Defendants Kuhn, Dyke, Garman, Paul, and West are premised on their respective roles in the grievance process, they are entitled to dismissal.

To the extent that Saleem seeks to hold Unit Manager Kuhn, Captain Dyke, and Superintendent Garman liable based upon their supervisory roles, this claim also fails. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.  Accordingly, insofar as Saleem's claims against Defendants Kuhn, Dyke, and Garman rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground.

2.  Religious Land Use and Institutionalized Persons Act of 2000

Section 3 of  the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even

7

if the burden results from a rule of general applicability," unless the government establishes

that the burden furthers "a compelling interest," and does so by the "least restrictive means."

42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA defines "religious exercise" to include "any

exercise of religion, whether or not compelled by, or central to, a system of religious belief."

42 U.S.C. § 2000cc-5(7)(A); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).

Although Congress intended that RLUIPA be construed "in favor of broad protection of

religious exercise," *see* 42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts

would apply the Act's standard with 'due deference to the experience and expertise of

prison and jail administrators in establishing necessary regulations and procedures to

maintain good order, security and discipline, consistent with consideration of costs and

limited resources.'"  *Cutter*, 544 U.S. at 723.  Congress indicated that in the event an

inmate's request for religious accommodation would "become excessive, impose unjustified

burdens on other institutionalized persons, or jeopardize the effective functioning of an

institution, the facility would be free to resist the imposition."  *Id.* at 726.

> a.   *Monetary Damages*
>
> (i)   Individual Liability

Saleem cannot recover monetary damages against the Defendants in their individual

capacities under RLUIPA.  It is well-settled that RLUIPA does not permit an action for

damages of any sort against state officials in their individual capacities.  *See Sharp v.*

*Johnson*, 669 F.3d 144, 155 (3d Cir. 2012). Defendants' motion will be granted in this regard.

(ii)    <u>Official Capacity</u>

Conversely, Saleem can proceed against the Defendants in their official capacities. *See Kelley Bey v. Keen*, No. 13-CV-1942, 2014 WL 3563475, at *13 (M.D. Pa. July 17, 2014) (holding that official capacity RLUIPA claims against county officials were not barred by the Eleventh Amendment which only applies to states (citing *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that while states may not be held liable for money damages under RLUIPA, municipalities and counties may)).

Under RLUIPA, the plaintiff must show that his religious exercise has been burdened substantially by the challenged conduct. *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007). "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." *Id.* at 280. The plaintiff bears the initial burden of demonstrating that a prison institution's policy or official practice has substantially burdened the inmate's religious practice. *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). If the plaintiff shows that prison administrators' actions or inactions have imposed a substantial burden on the exercise of his religion, the burden shifts to the prison administrator to establish that the

9

challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest. *Id.* at 362.

The initial burden falls on Saleem to demonstrate that an SCI-Rockview policy has substantially burdened the practice of his religion. Saleem has failed to establish any substantial or undue burden on his exercise of religious beliefs. He alleges that corrections staff used racial slurs, failed to protect him from the assault and robbery due to his religion, and denied his grievance based on his religious beliefs. (Doc. 1-1 ¶¶ 67-73, 80). Saleem does not identify how his religion was targeted or intentionally burdened by any of the Defendants. Moreover, Saleem has failed to oppose Defendants' motion, and he presents nothing beyond the allegations of his complaint. The Court cannot discern any burden on the practice of his religion from the record. Accordingly, the Court will grant Defendants' motion to dismiss the RLUIPA claim.

### 3. Negligence Claim against Bickle, Hanes, and Ostrofsky

Saleem sets forth a negligence claim against Defendants Bickle, Hanes, and Ostrofsky in relation to his loss of property. (Doc. 1-1 ¶¶ 168-172). Negligent or intentional deprivations of property by a state employee do not give rise to the level of constitutional claims if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Saleem cannot state a due process claim because the prison grievance system and Pennsylvania law provide him with an adequate state remedy for the deprivation of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013)

10

("'[A]n unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'")

(quoting *Hudson*, 468 U.S. at 533); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011)

(*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate

remedy for a willful deprivation of property); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d

410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-

deprivation remedy).  Saleem was not deprived of any process.  He acknowledges that he

availed himself of the prison grievance procedure and, although he may not agree with the

outcome of his grievance, his complaints were aired in the designated forum and assessed

by the appropriate officials.  Therefore, Defendants' motion will be granted with respect to

this claim.

### 4.    Claims against the Department of Corrections

Section 1983 provides that persons acting under color of state law may be found

liable if they deprive an individual of "any rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  *See* 42 U.S.C. § 1983.  To state a § 1983

claim, a plaintiff must plead two essential elements: (1) the conduct complained of was

committed by a person acting under color of state law; and (2) the conduct deprived the

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United

States.  *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

It is well-settled that neither a state nor its agencies are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991).  Consequently, Saleem's claims against the Pennsylvania Department of Corrections are barred, as it is not a person within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983 and is not a "person" for purposes of that provision).  Moreover, this Defendant is entitled to Eleventh Amendment immunity. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (finding that the Pennsylvania Department of Corrections "shares in the Commonwealth's Eleventh Amendment immunity").

### 5.   Injunctive and Declaratory Relief

Saleem seeks declaratory and injunctive relief in this matter.  However, Saleem is no longer housed at SCI-Rockview.  Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies."  U.S. CONST., art. III, § 2.  "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed,'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011)

(citation omitted).  Generally, an inmate's transfer from the facility complained of moots

claims for equitable and declaratory relief.  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir.

2003); *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011) (holding that the

prisoner's request for injunctive and declaratory relief against the named defendants was

rendered moot by his transfer to another prison).  Because Saleem is no longer

incarcerated at SCI-Rockview, he does not present a live case or controversy for injunctive

or declaratory relief regarding the policies or practices at that facility.

> ### D.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be

granted, the Court must grant Saleem leave to amend his complaint unless amendment

would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114

(3d Cir. 2002).  Saleem's claims are factually and legally flawed.  Additionally, he failed to

oppose Defendants' motion.  Therefore, the Court finds that granting leave to amend would

be futile.

## II.    Rule 56 Motion

### A.    Statement of Undisputed Facts[3]

The Department has established an inmate grievance review system to provide

prisoners in its custody with a regular procedure to resolve problems or other issues arising

during the course of their confinement.  The Department's inmate grievance system policy is

set forth in Administrative Directive 804 ("DC-ADM 804").  (Doc. 7 ¶ 1).  Pursuant to DC-

ADM 804, any inmate personally affected by a Department or institutional action or policy or

by the action of a Department employee may file a grievance.  (*Id.* ¶ 2).  The inmate is

encouraged to attempt to resolve his concerns informally prior to filing a grievance.  (*Id.*).

The grievance must be submitted in writing to the Facility Grievance Coordinator, using the

grievance form that is available on all housing units or blocks.  (*Id.*).  All inmates, regardless

of where they are housed in an institution, may file grievances.  (*Id.* ¶ 3).  All inmates are

provided with a copy of the grievance system policy and procedures manual in their inmate

handbook when coming into one of the Department's diagnostic and classification centers

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  *See id.*  Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts and attached exhibits.  (Docs. 7, 7-1).  Saleem did not file a response to Defendants' statement of material facts.  The Court accordingly deems the facts set forth by Defendants to be undisputed.  *See* LOCAL RULE OF COURT 56.1.  (*See also* Doc. 8 ¶ 2; Doc. 13 ¶ 3) (advising Saleem that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

and are provided notice of any revisions to the policy and procedures manual. (*Id.* ¶ 4). In

addition, when an inmate is assigned to a permanent institution, a copy of the grievance

system policy and procedures manual is available on all housing blocks and in the

institutional library for inmates to review or request to obtain copies. (*Id.*). Pursuant to the

DC-ADM 804, the Department has a three-tiered grievance system which serves as an

inmate's administrative remedy: (1) an initial review by a Grievance Officer; (2) appeal to the

Facility Manager or designee; and (3) appeal to the SOIGA for final review. (*Id.* ¶ 5). The

DC-ADM 804 sets forth requirements for grievances submitted by inmates. An inmate must

submit a grievance in writing to the Facility Grievance Coordinator, using the grievance form

which is available on all housing units or blocks, as well as in the main and mini-law

libraries. (*Id.* ¶ 6). Among other things, the inmate "must include a statement of the facts

relevant to the claim," which "must not exceed two pages" and "shall include the date,

approximate time and location of the event(s) that gave rise to the grievance." (*Id.* ¶ 7).

Also, in the grievance, "[t]he inmate shall identify [the] individuals directly involved in the

event(s)." (*Id.*). The inmate further is required to "specifically state any claims he/she

wishes to make concerning violations of Department directives, regulations, court orders, or

other law." (*Id.*). The inmate is required to include a request for the specific relief sought –

such as compensation – in the initial grievance. (*Id.*). Furthermore, "[a]ny grievance based

on separate events must be presented separately, unless it is necessary to combine the

issues to support the claim." (*Id.* ¶ 8). Pursuant to DC-ADM 804, the inmate must submit a

grievance for Initial Review to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. (*Id.* ¶ 9). The Facility Grievance Coordinator/designee shall assign a grievance tracking number to every grievance (even a rejected grievance) upon receipt and enter every grievance into the Automated Inmate Grievance Tracking System." (*Id.* ¶ 10). An inmate may appeal an Initial Review Response or Grievance Rejection to the Facility Manager (Superintendent) in writing within fifteen working days from the date of the Initial Review Response or Grievance Rejection. (*Id.* ¶ 11). Among other things, the text of the appeal must contain the reasons for the appeal. (*Id.* ¶ 12). Only an issue that was raised for Initial Review, determination of frivolousness, rejection and/or placement on grievance restriction may be appealed. (*Id.*). The Facility Manager then provides a written response to the inmate. (*Id.* ¶ 13). The Facility Manager may, among other things: Uphold the Initial Review Response, Uphold Inmate, Dismiss, Uphold in Part/Deny in Part, or Remand. (*Id.*). Any inmate who is not satisfied with the decision of the Facility Manager may submit an appeal, called an Inmate Appeal to Final Review, within fifteen (15) working days from the date of the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* ¶ 14). Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* ¶ 15). Along with the written appeal to final review, the inmate must include copies of the Initial Grievance, the Initial Review Response, the Inmate Appeal to the Facility Manager (Superintendent), and the

Facility Manager/designee's Response.  (*Id.* ¶ 16).  The Secretary's Office of Inmate

Grievances and Appeals then may, among other things: Uphold Response, Uphold Inmate,

Dismiss, Uphold in Part/Deny in Part, or Remand.  (*Id.* ¶ 17).  When an appeal is remanded

from the SOIGA to the facility, notification is provided to both the inmate and facility, and the

facility provides a revised response to the inmate.  (*Id.* ¶ 18).  If an inmate is dissatisfied

with the revised response, the inmate may appeal the revised response to final review again

within fifteen (15) working days of the date of the revised response.  (*Id.* ¶ 19).

Helen Shambaugh, Grievance Review Officer, reviewed the files of the Secretary's

Office of Inmate Appeals and Grievances for grievances filed by Plaintiff, Mohammad Sohail

Saleem MA-9795, regarding loss of property in December 2018.  (*Id.* ¶ 20).  On December

29, 2018, Saleem filed Grievance Number 779527 regarding an incident occurring on

December 10, 2018 at SCI-Rockview, wherein he complains that inmates stole his property

and that property was missing after being packed by unnamed staff members.  (*Id.* ¶ 21).

The grievance does not mention his religion or that he was being precluded from practicing

his religion.  (*Id.* ¶ 22).  Grievance Number 779527 states as follows:

> On or about December 10, 2018, I was robbed and assaulted by two
> individuals in my cell on A Block.  This incident was reported to security.  I
> was taken to hospital due to my eye injury.  A DC-141 No. 299754 was issued
> in the matter.  I was put into RHU when I came back from hospital.  Before I
> report to medical and going to hospital I secure my property with pad lock in
> my cabinet.  There was some property was stolen by these two individuals,
> which can be seen in the video.  Further, when my property was packed by
> staff, I am missing more property and personal items.

(Doc. 7-1, p. 50) (sic).

Grievance Number 779527 was received by the Facility Grievance Coordinator on December 31, 2018. (Doc. 7 ¶ 23). On January 17, 2019, Unit Manager Kuhn issued an initial review response and denied the grievance on the basis that Saleem's property was inventoried and accounted-for. (*Id.* ¶ 24). On January 28, 2019, Saleem appealed the initial review response to the Facility Manager. (*Id.* ¶ 25). The initial review response was upheld by the Facility Manager on February 20, 2019. (*Id.* ¶ 26). The SOIGA did not receive an appeal of the Facility Manager's decision, but received a letter from Saleem on July 7, 2019 inquiring about the status of the Grievance Number 779527. (*Id.* ¶ 27). On July 18, 2019, the SOIGA issued a response to Saleem indicating that his correspondence was being filed without further action because no appeal of the grievance had been received by the SOIGA. (*Id.* ¶ 28). On July 29, 2019, Saleem forwarded to the SOIGA an appeal of Grievance Number 779527 dated May 9, 2019. (*Id.* ¶ 29). On August 8, 2019, the SOIGA dismissed Saleem's appeal as untimely. (*Id.* ¶ 30). The SOIGA has no record of Saleem filing a grievance subsequent to Grievance Number 779527 regarding missing property at SCI-Rockview. (*Id.* ¶ 31).

The SOIGA has no record of Saleem filing a grievance in December 2018, or after, regarding any officer being deliberately indifferent to his safety at SCI-Rockview. (*Id.* ¶ 32). The SOIGA has no record of Saleem filing a grievance in December 2018, or after, regarding infringement of his religious rights at SCI-Rockview. (*Id.* ¶ 33). The SOIGA has

no record of Saleem filing a grievance in December 2018, or after, about the grievance system or those involved in responding to his grievances. (*Id.* ¶ 34).

### B.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### C.     Discussion

Defendants contend that Saleem failed to properly exhaust any grievances in the

prison's administrative review process prior to proceeding to federal court.  (Doc. 6, pp. 11-

15).  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to

pursue all avenues of relief available within the prison's grievance system before bringing a

federal civil rights action concerning prison conditions.  *See* 42 U.S.C. § 1997e(a); *Booth v.*

*Churner*, 206 F.3d 289, 291 (3d Cir. 2000).  Section 1997e(a) establishes the requirement

of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has

been made clear that the exhaustion requirement is mandatory.  *See Williams v. Beard*, 482

F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of

the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d

Cir. 2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the

exhaustion requirement."  *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*,

28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable

grievance procedures and rules.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).  The

PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The Department of Corrections has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 Pa. Code § 93.9(a); Pa. Dep't of Corr., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process).

The record reflects that Saleem filed one grievance relating to the allegations in the complaint.  On December 29, 2018, Saleem filed Grievance Number 779527 asserting that inmates stole his property, and that property was missing after being packed by unnamed staff members.  (Doc. 7 ¶ 21; Doc. 7-1, p. 50).  On January 17, 2019, Unit Manager Kuhn issued an initial review response and denied the grievance.  (Doc. 7 ¶ 24; Doc. 7-1, p. 51).  On January 28, 2019, Saleem appealed to the Facility Manager.  (Doc. 7 ¶ 25; Doc. 7-1, p. 52).  On February 20, 2019, the Facility Manager upheld the initial review response.  (Doc. 7 ¶ 26; Doc. 7-1, p. 53).  On August 8, 2019, the SOIGA ultimately dismissed Saleem's appeal as untimely.  (Doc. 7 ¶ 30; Doc. 7-1, p. 47).  An untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement.  *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006); *see also Spruill*, 372 F.3d at 230.  It is undisputed that Saleem did not file any additional grievances relating to missing property at SCI-Rockview.  (Doc. 7 ¶ 31).  It is also undisputed that Saleem did not file any grievances regarding any officer being deliberately indifferent to his safety at SCI-Rockview, regarding infringement of his religious rights at SCI-Rockview, or regarding the grievance system or those involved in responding to his grievances.  (*Id.* ¶¶ 32-34).

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules.  *Woodford*, 548 U.S. at 90-93.  It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit.  *Booth v.*

*Churner*, 532 U.S. 731, 738 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Saleem. To the contrary, it establishes that Saleem had full and ready access to the administrative remedy process.

In light of the undisputed facts and relevant evidence of record, the Court concludes that Saleem has failed to produce any evidence to overcome Defendants' summary judgment motion and cannot argue against summary judgment by merely relying on unsupported assertions, inferences based upon a speculation or conjecture, or unverified, conclusory allegations. Under Rule 56, Saleem was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material

24

fact.  *See Celotex Corp.*, 477 U.S. at 324.  Because he has failed to do so, the Court

concludes that Saleem has not properly exhausted the claims in this action, and Defendants

are entitled to an entry of summary judgment in their favor.

## III.   **Conclusion**

The Court will grant Defendants' motion (Doc. 5) in its entirety.  A separate Order

shall issue.

Robert D. Mariani
United States District Judge

Dated: May ___, 2022

25